Okay a very, very funny conversation I have been having with friends and family in politics מכynı      Okay a very, very funny conversation I have been having with friends and family in politics Okay a very, very funny conversation I have been having with friends and family in politics May it please the court, my name is Robert Oakley. I'm here from the Department of Justice, representing the Department of Energy in this case. I know I have 10 minutes and to the extent possible I'm going to try to save 2 minutes out for rebuttal and I know I'm responsible for that as well. The question for this case, which is now on from remand, I believe Judge Fernandez was on the prior panel, has to do with construction of a settlement agreement between Idaho and the Department of Energy. This court, when the court heard the case before, was concerned with section B-1 of the settlement agreement that requires the U.S. Department of Energy to ship all transuranic waste now located at Inel, currently estimated at 65,000 cubic meters in volume and then thereafter follows a schedule and a place to where it's going to go out of state. The court said in remanding the case that it was important, quote, for the district court to consider the party's extrinsic evidence including the source of the 65,000 cubic meters estimate in interpreting the contract so as to give effect to the second clause as well as the first. Our first argument, Your Honor, is that the district court did not answer the question that this court charged it with. It did not determine the source of the 65,000 cubic meter estimate. It rather determined what one person in Idaho eventually found that she thought the number meant. But in terms of identifying the source of the 65,000 cubic meters, even though the trial transcript made it clear that Idaho introduced it into the negotiations, not the Department of Energy, the testimony made it clear that DOE used that 65,000 cubic meters to refer to waste stored, not located, but stored at Inel, and also that in the environmental impact statement where the number came from, 65,000 cubic meters was used to estimate the source of the 65,000 cubic meters. The total transuranic and alcalo level waste located in the transuranic storage area at Inel. Does this really matter, or is this just lawyers attempting to parse words to make plain language far more difficult than it really is? The phrase to ship all waste located at. What's ambiguous about that? Above ground, below ground, in the atmosphere, if it's located at, you're obligated to ship all waste. Your Honor, if the phrase B1 read that the Department of Energy agreed to ship all transuranic waste located at Inel, we would not be here today. We would not have raised the argument. Everybody would have understood it. The 65,000 cubic meters, this Court said the last time it was here, meant something. We said to check the provenance of that. And it turns out the district court hears all this evidence, and it turns out the provenance, you can't find a particular place for it. It turns out that wherever the number came from initially, it was changed. Clearly changed, because that number included apples and oranges, or let's say apples and applesauce. If it did come from the EPA, which there isn't actual proof of, but if it did come from that ESA, if it came from there, it was included apples and applesauce. And along the way, the parties took out the applesauce. So the number made no sense at that point. It was only talking about apples now. And that's what the district judge finally did. He tried to figure out what you guys are doing, what those guys are doing, and everybody is hiding things. You folks see it's a problem, but you say, well, we're not going to raise it because it might cause a problem. Where's the district court supposed to do that? Let me see if I can pick up on a number of points that you made, Judge. I made a few. I know there were. But quickly, first, Idaho introduces the figure. Well, it introduced it, but it introduced it in two ways, not in the way it wound up. First of all, with regard, it clearly was applying, as Judge Fernandez says, to transuranic and alpha, whatever it's called, level waste. So that was plainly something else. Second of all, it did not use the phrase currently estimated at 65,000 cubic meters. That came in later. That's correct. It simply said, for all one can tell from its version, this was just the first 65,000. It didn't say there wasn't going to be more. It just said before 2003, remove 65,000. That's all it said. At least. At least, right. But then DOE takes the 65,000 and sends back two drafts to Idaho, in which it refers, it does two things. First, it refers to 65,000 cubic meters transuranic waste stored, not located, stored at INO. At the same time, in these drafts, it also asks for the change in the definition or the specificity of the definition of transuranic waste, which Judge Fernandez referred to, which creates the problem. So DOE sends back these two drafts, 65,000, and it uses the word stored. The final offer then comes from Idaho, keeping the 65,000. So 65,000 is now inaccurate, right, because it's not in fact the current estimate? Yes. And interestingly, it's inaccurate from Idaho's standpoint as well. It's inaccurate as at the top, but not the bottom. It's inaccurate if there is not 65,000 cubic meters of stored transuranic as defined waste at INO. But it is also inaccurate in the way that Idaho used it. Idaho used it, and this is according to the testimony of Kathleen Trevor, one of their witnesses at trial. She had been using it because they put it in the final offer, the offer that they accompanied with a press release, which pretty much told DOE take it or leave it. It still had 65,000 cubic meters. But it doesn't say in an amount not to exceed 65,000. I would understand that the department would have an argument. It just simply says it's estimated to be an amount of. Yes, and let me – importantly, Idaho, through Ms. Trevor, conceded that that was totally wrong. They were using it – she was using it to mean all transuranic and alpha-level waste stored or buried, which is 127,000 cubic meters. And she says, I was quite chagrined when I found this out. So she now says, well, I've got to figure out what does the 65,000 cubic meters mean. She goes off and does various estimates. She can't come up with 65,000, but she says maybe somewhere between 60,000 and 70,000 cubic meters. It's not an estimate. I'm sorry? It said it was an estimate, and it's an estimate. It's an estimate, but she knows she's been using the term inaccurately. And she comes up with her own number. She doesn't say that she told anybody in Idaho, and she certainly – it's quite clear that she didn't talk to anybody at DOE. The DOE people thought, yes, they were disturbed by the change of the word stored to located, but they thought this was a problem only for those people not involved in the negotiations. Even the district court found that the DOE people believed – What is the DOE's explanation for the 65,000 then? That it refers to the waste in the transuranic storage area because DOE planned on taking all the alpha level waste component of the 65,000. But how is that – that's – talk about secrets. I mean, that's a complete secret. I mean, you were the ones who were insisting that you weren't going to do that and that you were only going to deal with the transuranic waste, and now you have a secret plan to do something else, and that's supposed to be driving the contract. It's not a secret because the agreement specifically explains that this facility is going to be built to treat the waste. Now, what the district court found is that he did not find that we went to the point of making absolutely certain that they understood treatment mixed so that it would all be transuranic waste when it left, so that 65,000 cubic meters of transuranic waste would leave IMAIL, but it would be because you mixed the lower level radioactive waste with the higher level radioactive waste to the point that it all qualifies as transuranic. It was not a secret. But my point is, Idaho, knowing that a number that it's been using in drafts, in its final offer that the governor accompanies with the press release, that this is really pretty much a take-it-or-leave-it offer, that it realizes that it doesn't know what the number means, and it contrives to cram a round peg into a square hole, doesn't check it with DOE, and Idaho, I mean, whatever you want to say about DOE, they did not think, no one from DOE testified, look, we don't think Idaho understands what this means. In the case of Idaho, Idaho had to know that nobody else came up with this number, that this number could not be derived from any one place. Well, it's not so hard as I understand it. It was 50% of one was transuranic waste, 50% of the other was transuranic waste. If you add them up, you're somewhere around 65,000. Maybe you're a little higher, a little lower. But in the meantime, Idaho had received two drafts that identified 65,000 as the amount of stored waste, and that 65,000 number was in the EIS as the amount of stored waste. So it had this information, putting it on notice of at least what DOE seemed to think it was, and nevertheless, it doesn't want to talk to DOE when it realizes it's been using a number that's only 50% of what its announced goal was. To cut to the chase here, DOE would have been better off if it signed the sign, at least in terms of this part of the deal, and the deal covers a lot of things. But in terms of this part of the deal, DOE would have been better off if it signed the final off with the 65,000 in there and let Idaho live with the consequences. Thank you. Thank you very much. Counsel. Good morning, Your Honors. Daryl Early on behalf of the State of Idaho and the Governor of the State of Idaho. Your Honors, this case was remanded to the district court so that the district court could consider extrinsic evidence and determine whether the reference to 65,000 cubic meters used in the agreement was understood by the parties to limit the geographic scope of paragraph B1 to a specific geographic location, specific pile of waste at the INL, known as the transuranic storage area. After nearly a week of testimony presented to the court, the district court found that the evidence did not show an intent in this agreement to limit the scope of DOE's obligation to remove the waste. Rather, the intent of the parties is what is reflected in the most natural reading of the agreement, which is that the government has removed all of the transuranic waste located at the INL. There's substantial evidence to support the district court's decision, and we ask that you affirm. When you boil this case down to the nugget of it, the gist of the DOE's argument has throughout this case been that the number 65,000 is a proxy or a surrogate reference to this pile of waste at the site. It is clear from the evidence, and Judge Lodge's district court specifically found, that DOE never communicated that understanding of the number 65,000 to the parties, to the State of Idaho, and that the State of Idaho never shared that common understanding that the DOE attaches to that number. Besides which, the place it came from, supposedly, which is the EIS, defined it as being transuranic and alpha low-level waste. That is correct, Your Honor. When we ended up without the alpha low-level waste. I think the record is very clear that throughout innumerable exhibits that were offered into trial, including the EIS that you just referenced, the DOE consistently uses the term transuranic waste and alpha low-level waste distinctly. They even do so in the 1995 agreement itself, when in paragraph E2, they specifically refer to a facility to treat transuranic and alpha low-level waste. So the idea that the State is supposed to understand transuranic waste to be inclusive of alpha low-level waste is simply not borne out in the DOE's documents, nor is it borne out, obviously, by the negotiating history of this agreement, where the parties went back and forth and back and forth on this issue, and the DOE insisted over and over again to exclude it. Moreover, the DOE's own documents showed an intent to actually build a landfill at the INL for the disposal of the transuranic, or I'm sorry, I misspeak, the alpha low-level waste. So as the State sits in this negotiation looking at all this evidence, all of this objective manifestation of what this contract is supposed to mean, they understand the DOE to be saying transuranic waste is what we're saying it is. The long and the short of the district court heard all of this and made findings and determined that that's what it meant. That is the long and the short of it, Your Honor. You guys are thinking one way. Let's see everybody's being perfectly open and honest. Idaho's thinking one thing. DOE's thinking something else. Everybody's being really cute about not giving information back and forth. Almost sounds like the kind of case where somebody would have asked to rescind it, but nobody wanted to do that, I take it. So it's not rescinded. So here we are, and the district court has said, here's all this stuff going on. How do you interpret this phrase at the end of the day? And that's what the district court decides. Isn't that where we're at? That is exactly where we're at, Your Honor. And the question is whether that's so bad that we should overturn it. That is the correct standard, Your Honor. The clearly erroneous standard obviously applies. And I appreciate where you're going with this. I think you boil it down to it. It really seems to be something of a perhaps law school example for a negotiation class of how not to negotiate a contract. But that's where we are. Your Honor, I believe that it could be used as such a case study. But I do believe that it's important to note that in what the district judge did find, as it relates to the State's communications on this issue back to the DOE, the State consistently maintained throughout these negotiations, and the trial court found as a matter of fact, that Governor Batt and the parties, that Governor Batt and Attorney General Lance maintained consistently that buried waste was supposed to be covered by this agreement. And that they, and that the DOE specifically understood that. And there's ample testimony in the record. I have one minor question. At some point, a woman whose name I can't remember testified that she actually said the buried waste and that somebody across the table nodded. Did Judge Lodge ever make a finding about whether that happened? Your Honor, Judge Lodge does not specifically address that colloquy, that piece of evidence. Some other people suggested it didn't happen. And maybe we should best forget about it. But he didn't, he never made a finding on it. He did not make a finding. The facts in the record, though, are that that issue was not necessarily controverted. Mr. Grumbly responded in cross-examination on that issue to basically saying it could have happened. I don't remember. It could have happened. And indeed, Ms. Trevor was adamant that it in fact did. So there's no evidence from the DOE that it didn't happen. There's at best a lack of recollection of it ever happening.  Well, without an actual fact finding as to whether it happened as an appellate court, we best maybe just don't deal with it. Nonetheless, Your Honor, the district court did find specifically that the State manifested its intent that this agreement cover buried waste, both in writing and the Governor's three stated goals for the agreement, all throughout the negotiations. Mr. Grumbly testified that he understood that that was the bargaining basis of the State of Idaho throughout this agreement. Those facts, coupled with the complete lack of communication on the other side from DOE, any explanation, as you mentioned, of this secret plan to treat the transuranic waste and the alpha-low-level waste, the fact that ultimately the number that's used in the agreement is consistent with transuranic waste across the site, all leads to the objective, looking at it from the outside in, objective showing that this agreement should be read consistent with what its natural reading is, which is simply that the number, 65,000, is just that, a number, an estimate about what the parties thought was the entirety of this waste stream. In that sense, Your Honor, the district judge resolved the ambiguity that this court directed it to resolve on remand. And that is really the end of the analysis at that point. I think I've pretty much covered the basis of this, Your Honor, and if there's no further questions, I'll conclude. Thank you very much. You have, I think, 18 seconds, and we'll give you one minute. So go ahead, if you have anything else to say. Well, I will try not to even take the full minute. On the head nod question, the district court didn't find it, and I think if that's important to the court, the court would have to remand for a factual finding in that respect, because Mr. Grumley also explained how he could not likely commit the government to spending all the money that would have been spent on the waste stream. It probably doesn't matter, but I guess it's true. Then I just want to stress again, there's no question that this is not a model of how to negotiate an agreement, but the focus seems to remain on DOE's mistakes, but Idaho put the $65,000 cubic meter number out there, and they got two drafts showing what DOE thought it meant, because they're using it to refer to stored waste that's in the EIS, and so I think, again, what Ms. Trevor did was not a reasonable thing, and the risk of uncertainty lies on Idaho, not DOE. But thank you, Your Honor. Thank you very much. Thank you, counsel. The case of United States v. Otter, actually, is submitted, and we are in recess until tomorrow.
judges: Fernandez, Berzon, Wright